UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re
Tomas H. Guzman and
Caroline A. Guzman,
      Debtors.

Case No. 05-45978-svk
Chapter 13

**Memorandum Decision on
Trustee's Objection to Confirmation**

      At the ceremony when President Bush signed the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), making sweeping changes to Title 11 of the United States Code (the Bankruptcy Code), the President stated:

> In recent years, too many people have abused the bankruptcy laws. They've walked away from debts even when they had the ability to repay them. This has made credit less affordable and less accessible, especially for low-income workers who already face financial obstacles.
>
> The bill I sign today helps address this problem. Under the new law, Americans who have the ability to pay will be required to pay back at least a portion of their debts. Those who fall behind their state's median income will not be required to pay back their debts. This practical reform will help ensure that debtors make a good-faith effort to repay as much as they can afford.[1]

The President's remarks reflect a common sentiment that BAPCPA would force "above-median" debtors into chapter 13 to make a good faith effort to repay their creditors. When the above-median debtors in this case filed a plan proposing to pay nothing to unsecured creditors, even though their budget showed that they had excess funds available, the chapter 13 trustee objected to confirmation of their plan. For the reasons stated in this Decision, which constitutes the Court's Findings of Fact and Conclusions of Law, the debtors' plan complies with BAPCPA's new standards, and the Trustee's Objection cannot be sustained.

      Section 1325(b)(1) of the Bankruptcy Code requires that if a creditor or the chapter 13 trustee objects, the court cannot confirm the debtor's proposed plan unless either all claims are paid in full, or the plan provides that all of the debtor's projected disposable income will be paid to unsecured creditors. This concept was added to chapter 13 by the Bankruptcy Amendments and Federal Judgeship Act of 1984 (BAFJA), and seems straightforward enough: the benefits

---

[1] Press Release, White House Press Office, President Signs Bankruptcy Abuse Prevention, Consumer Protection Act (Apr. 20, 2005), available online at http://www.whitehouse.gov/news/releases/2005/04/20050420-5.html.

that come with a chapter 13 confirmation are contingent upon excess income being dedicated to the creditors. Of course, what constitutes excess or disposable income is debatable. Prior to the effective date of BAPCPA on October 17, 2005, "projected disposable income" was defined as income that was not reasonably necessary for the maintenance or support of the debtor or a dependent. 11 U.S.C. § 1325(b)(2)(A) (2005).

Determining what expenses were "reasonably necessary" for the debtor's maintenance or support required bankruptcy courts to face "many difficult questions of lifestyle and philosophy." 5 *Norton Bankruptcy Law & Practice 2d* §122:10, at 122-111 (2006 West). *See, e.g., In re Kitson*, 65 B.R. 615, 621 (Bankr. E.D.N.C. 1986) (Debtor must eliminate $48 for health club membership, $20 for gymnastics class, $24 for newspapers and $433 of miscellaneous expenses); *In re Reyes*, 106 B.R. 155, 157-58 (Bankr. N.D. Ill. 1989) (New four-wheel drive Blazer is extravagance and budget is inflated: $120 recreation; $120 transportation; and $300 food for single person); *Univest-Coppel Village, Ltd. v. Nelson,* 204 B.R. 497, 500 (E.D. Tex. 1996) (District Court reversed Bankruptcy Court and held $395 per month for private school tuition not reasonably necessary); *In re Woodman*, 287 B.R. 589, 592-593 (Bankr. D. Me. 2003) (Tobacco expenses of $240 per month were reasonable and necessary). These cases invariably included an analysis of the debtor's budget, which is included in the bankruptcy schedules as Schedule I (Current Income) and Schedule J (Current Expenditures).

For chapter 13 debtors with income above the State median, all of this has changed under BAPCPA. Specifically at issue in this case is the application of new § 1325(b)(3), which explicitly defines "reasonably necessary" expenses for debtors whose current monthly income exceeds the applicable State median family income. The question posed is whether such an above-median debtor with no disposable income under § 1325(b)(3) (as shown on Form B22C) but who does appear to have excess income when Schedules I and J are compared, is required to pay that excess income into the plan. Although contrary to the stated purpose of BAPCPA and seemingly discriminatory against chapter 13 debtors with incomes below the median, the unambiguous language of the new statute compels but one answer: the above-median debtor's expense deductions are governed by Form B22C, not by Schedule J. If the above-median debtor's Form B22C contains enough deductions, the debtor will be entitled to obtain confirmation of a plan paying nothing to the unsecured creditors, even though the debtor's budget shows that excess funds are available.

Tomas and Caroline Guzman filed their chapter 13 petition on December 20, 2005; their Schedule I states that they have two minor children and combined monthly income as of the petition date of $5,301.36. According to their Form B22C "Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income," their combined "current monthly income" totals $7,317.75. The Guzmans' Form B22C income and their Schedule I income differ because Form B22C requires the debtor to list the *average* monthly income for the six months prior to the petition,[2] while the Schedule I instructs the debtor to give the "estimate of monthly income as of the filing of the petition." Annualizing their current

---

[2] New Bankruptcy Code § 101(10A)(A) defines "current monthly income."

2

monthly income from Form B22C totals $87,813, which exceeds Wisconsin's median income for a family of four of $67,869. Accordingly, in BAPCPA parlance, the Guzmans are above-median debtors.

BAPCPA provides a different test for above-median and below-median debtors in calculating the expenses to be excluded to reach disposable income. For our purposes, the relevant provisions of Section 1325(b) state:

> (2) [T]he term "disposable income" means current monthly income received by the debtor . . . less amounts reasonably necessary to be expended-
>
> (A) (i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed . . .
>
> (3) Amounts reasonably necessary to be expended under paragraph (2) shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than–
>
> (A) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;
>
> (B) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or
>
> (C) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $525 per month for each individual in excess of 4.

Accordingly, under § 1325(b)(3), for above-median debtors, the expenses to be deducted in calculating disposable income *shall* be determined under Bankruptcy Code § 707(b)(2)(A) and (B). According to § 707(b)(2)(A)(ii), "The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent." Section 707(b)(2)(A)(iii) and (iv) also allow the deduction of average monthly payments for secured debts and priority claims. Interim Bankruptcy Rule 1007(b)(6) provides: "A debtor in a chapter 13 case shall file a statement of current monthly income, prepared as prescribed by the appropriate Official Form, and, if the debtor has current monthly income greater than the median family income for the applicable state and family size, a calculation of disposable income in accordance with § 1325(b)(3), prepared as prescribed by the appropriate Official Form." In October 2005, the Judicial Conference of the United States promulgated Official Form B22C to

3

enable debtors to provide the information necessary to calculate whether the debtor's income is above or below the median, and, if above, to calculate the deductions allowed by § 707(b)(2)(A).

Since the Guzmans' annualized current monthly income on line 21 of their Form B22C exceeds the Wisconsin median income for a family of four, the Form directs them to complete Part IV, "Calculation of Deductions Allowed under § 707(b)(2)."[3] The Guzmans filled in the standard amounts under the National Standards for food, clothing, household supplies, personal care and miscellaneous, and the standard amounts under the Local Standards for housing, utilities and two vehicles. Pursuant to the Form, they then inserted actual average monthly expenses for the following categories: taxes, payroll deductions, life insurance, child care, health care, and telecommunication services. The subtotal of the "Total Expenses Allowed under IRS Standards" is $4,408.53. Next, the Guzmans added "Additional Expense Deductions," in Subpart B of Form B22C, for health insurance, education expenses, additional food and clothing expense ($59) and continued charitable contributions ($25), for a total "Additional Expenses" of $203.06. In Subpart C of the Form, the Guzmans provided for future and past due payments on secured claims, priority claims and chapter 13 administrative expenses, i.e., Trustee commissions on their projected chapter 13 plan payments. The total deduction for debt payment is $3,265.05, for a grand total of all deductions allowed under § 707(b)(2) of $7,876.64.

Finally, in part VI of the Form B22C, the Guzmans subtracted their total deductions of $7,876.64 from their current monthly income of $7,317.75, resulting in a *negative* monthly disposable income of $558.89. Since they have no disposable income as defined by §1325(b)(2), the Guzmans filed a plan proposing to pay nothing to their unsecured creditors. The Chapter 13 Trustee objected, stating that a comparison of the Guzmans' Schedule I and J shows that they have income of at least $500 bi-weekly that should be dedicated to the plan. Subtracting the Schedule J expenses of $4,217.66 from the Schedule I income of $5,301.36 results in "monthly

---

[3] A good explanation of the various categories of allowable deductions on Form B22C is found in *In re McGuire*, 342 B.R. 608, 612 (Bankr. W.D. Mo. 2006): "[F]or above-median debtors, the statute breaks down allowable expenses into five general categories: (1) those that fit into the IRS' National Standards, which include food, clothing, household supplies, personal care, and miscellaneous expenses; (2) those that fit into the IRS' Local Standards, which include housing and transportation; (3) actual expenses for items categorized by the IRS as 'Other Necessary Expenses,' including such items as taxes, mandatory payroll deductions, health care, and telecommunication services; (4) actual expenses, with limitations, for certain other expenses specified by the Bankruptcy Code, such as care for disabled family members and tuition; and (5) payments on secured and priority debts. Because § 707(b)(2)(A)(ii)(I) provides that monthly expenses pursuant to the IRS Standards 'shall not include any payments for debts,' and debtors are permitted to deduct actual mortgage and car payment amounts separately, debtors must deduct from the IRS Standard expenses their monthly mortgage and car payments to avoid double-dipping."

4

net income" on Schedule J of $1,083.70. Of that amount, the Debtors have dedicated $895.72 monthly to their chapter 13 plan, all of which is dedicated to pay secured and priority claims.[4]

The Trustee cites three cases in support of his argument: *In re Fuller*, No. 06-30313 (Bankr. S.D. Ill. June 16, 2006); *In re Jass*, 340 B.R. 411 (Bankr. D. Utah 2006); and *In re Hardacre*, 338 B.R. 718 (Bankr. N.D. Tex. 2006). None of these cases addresses the specific issue here. In *Fuller,* the debtors' current monthly income from Form B22C (the average from the six months prior to bankruptcy) significantly exceeded their Schedule I estimate of monthly income as of the date of the petition, and the trustee argued that the excess should be included in the chapter 13 plan. Judge Pepper held that *income* should be determined by analyzing the Schedule I income as of the petition date, rather than the average historical income from six months prior to the bankruptcy, but that *expenses* are governed by Form B22C for above-median debtors. Similarly, *Hardacre* involved the question of whether the debtor's prior income as shown on Form B22C or the anticipated income more closely shown on Schedule I was the appropriate measure of projected monthly income. *Hardacre* also addressed some of the actual calculations on the expenses portion of Form B22C, namely whether a debtor could deduct both the National and Local standards for secured debts, as well as the average monthly payments on those debts, thereby reducing disposable income needed to fund the plan. The court concluded that such "double-dipping" was not permissible. In this case, the Trustee has not questioned the manner in which the Guzmans completed their Form B22C; rather the Trustee's focus is on the excess of Schedule I income over the Schedule J expenses. And *Jass* was another "rear view mirror" (Form B22C) versus "crystal ball"(Schedule I) case, analyzing the requirement that projected disposable income be dedicated to the plan. *See In re Renicker,* 342 B.R. 304, 308-309 (Bankr. W.D. Mo. 2006) ("In *Jass*, Judge Thurman determined that disposable income should be calculated using a debtor's projected (versus historical) income, and that while CMI, an inherently retrospective concept, is presumed to be representative of the debtor's projected income, that presumption can be rebutted by a showing that the CMI is no longer accurate."). Not one of the cases cited by the Trustee analyzed the § 1325(b)(3) requirement that reasonably necessary expenses for above-median debtors *shall* be determined under § 707(b)(2).

The Guzmans have cited *In re Barr*, 341 B.R. 181 (Bankr. M.D.N.C. 2006), which does construe the same provisions at issue here. In *Barr*, the above-median debtor's Form B22C showed a negative monthly disposable income of $76.47, but a comparison of her Schedules I and J showed over $500 per month available after subtracting her proposed plan payments. The trustee argued that the debtor's unwillingness to commit any of the leftover funds constituted a lack of good faith, and objected to confirmation of her plan under § 1325(a)(3). The debtor countered that her ability to pay must be determined solely by § 1325(b)(3), i.e., Form B22C. The court sided with the debtor, first noting that after the amendments made by BAFJA in 1984,

---

[4] The Trustee has not objected to the plan's feasibility, but the lack of "current monthly income" over permissible deductions from Form B22C would appear to have no bearing on whether the Guzmans will be able to make their future plan payments from their actual income. *See In re Alexander*, 2006 Bankr. LEXIS 1272, *18-19 (E.D.N.C. June 30, 2006) (Plan feasibility is no longer dictated by the disposable income calculation.).

5

ability to pay was not a part of the good faith analysis in confirming a chapter 13 plan. More importantly, the court in *Barr* focused on the mandatory nature of the language of § 1325(b)(3): "Amounts reasonably necessary to be expended under paragraph (2) *shall* be determined in accordance with subparagraphs (A) and (B) of § 707(b)." (Emphasis supplied). This language removes all discretion from the bankruptcy court in reviewing the reasonableness of the expenses claimed by the above-median debtor. The *Barr* court held: "Depending upon whether a debtor's actual expenses and deductions are greater or less than those specified in § 707(b)(2), an above-median-income debtor may have 'excess' income that such debtor is not required to commit to the payment of unsecured creditors." *Id.* at 185.

The court reached the same result in *In re Alexander*, 2006 Bankr. LEXIS 1272 (Bankr. E.D.N.C. June 30, 2006). In response to the argument that the process for calculating disposable income under § 1325(b)(3) fails to curb abuse as BAPCPA intended and leads to absurd results (debtors allowed to deduct large secured debt expenses for luxury goods and pay nothing to unsecured creditors), the court noted that chapter 13 trustees apprised Congress of their concerns about this provision before it was passed, and that "this alert, followed by the Legislature's nonresponse, should support a presumption of legislature awareness and intention." *Id.* at *11 (quoting Marianne B. Culhane & Michaela M. White, *Catching Can-Pay Debtors: Is the Means Test the Only Way?*, 13 Am. Bankr. Inst. L. Rev. 665, 681 (2005)).

The court in *Barr* also noted that the "legislative history reflects that Congress was aware that § 1325(b)(3) represented a departure from using the debtor's actual expenses in favor of IRS standards that differ markedly from the debtor's actual expenses." 341 B.R. at 185. Especially in view of this legislative history, this court cannot fault the *Alexander* court's conclusion: When faced with an unambiguous statute, the court's job is to enforce the statute according to its terms. *Id.* at *9-10*, (citing *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004)). Although the result of such enforcement is contrary to the popular notion that BAPCPA would require well-to-do debtors to repay as much of their debts as possible, strict application of § 1325(b)(3) dictates that in above-median cases, bankruptcy courts are no longer permitted to review the debtor's Schedule J to determine what expenses are reasonably necessary for the debtor's support, or to require that excess Schedule I income over Schedule J expenses must be dedicated to the plan.

The commentators also support this interpretation of the statute. According to *Collier*:

[Section 1325(b)(3)] permits debtors to deduct amounts allowed by the chapter 7 means test, even if they seem excessive to a trustee or creditor. Secured debt payments are deductible, no matter how high. Moreover, secured debt payments due are deductible even if the debtor will have to pay less in a chapter 13 plan because the debt can be crammed down under § 1325(a)(5). . . . It may also provide some leeway from the strictures of the IRS standards for other expenses. Other expenses that are sometimes not allowed under prior law, such as a limited amount for private school education, are also permitted.

8 Lawrence P. King, *Collier on Bankruptcy* ¶ 1325.08 (15th ed. rev. 2006)(footnotes omitted).

While this provision of the new statute does not perform as advertised, perhaps prompting trustees, unsecured creditors and even some bankruptcy judges to long for the "good old days" of reviewing Schedules I and J and determining whether private school, high speed internet access, and a pack-a-day habit were reasonable and necessary for the debtor's maintenance and support, the mandate of new § 1325(b)(3) is clear. The court must decide the "amounts reasonably necessary to be expended" for above-median debtors based solely on § 707(b)(2)(A) and (B), i.e., Form B22C, not on excess income over expenses from Schedule J.

Since in this case the Trustee has not questioned the actual amounts listed on the Guzmans' Form B22C, and those amounts show that no projected disposable income is available for unsecured creditors, the Trustee's objection must be overruled.

Dated: July 19, 2006

By the Court:

*Susan Kelley*

Susan V. Kelley
U.S. Bankruptcy Judge

7